1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KATHRYN THAUT, et al.,              No. 2:15-cv-0590-JAM-KJN PS

12              Plaintiffs,

13        v.                             ORDER AND

14   K. HSIEH, et al.,                   FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Presently before the court are two motions to dismiss, one of which was filed by

18   defendants K. Hsieh, Samuel McAlpine, Jack McCue, G. Jude Shadday, John Lipson, and Gary

19   Swarthout, and the other of which was filed by defendants Priyasheelta Nand, Ramesh Dharawat,

20   and County of San Joaquin.  (ECF Nos. 17, 18.)  All plaintiffs filed oppositions to both motions.

21   (ECF Nos. 25, 26.)  Defendant Northbay Healthcare filed statements of non-opposition to both

22   motions.  (ECF Nos. 23, 24.)  The moving defendants filed replies in support of their respective

23   motions.  (ECF Nos. 29, 30.)

24        The court heard this matter on its July 16, 2015 law and motion calendar.  Plaintiffs

25   Kathryn Thaut, Mary Pauline Edwards, Kirk Edwards, Sherilyn Edwards, and David Edwards

26   appeared telephonically on behalf of themselves.[1]  Attorney Vickie Whitney appeared on behalf

27   _____

28   [1] Plaintiff Kathryn Thaut initially appeared via telephone at the hearing; however, she was
     disconnected from phone service early on in the proceeding and could not reconnect for the

1

1    of defendants Hsieh, McAlpine, McCue, Shadday, Lipson, and Swarthout.  Attorney Michael

2    Mordant appeared on behalf of defendants Nand, Dharawat, and County of San Joaquin.

3    Attorney Neal Lutterman appeared on behalf of defendant Northbay Healthcare.

4        The undersigned has fully considered the parties' briefs, the parties' oral arguments, and

5    appropriate portions of the record.  For the reasons that follow, defendants' motions to dismiss are

6    granted, but with leave to amend, as to defendants Hsieh, McAlpine, McCue, Shadday, Lipson,

7    and Dharawat.  Furthermore, it is recommended that defendants Swarthout, Nand, and County of

8    San Joaquin be dismissed from this action with prejudice.

9    I.    Relevant Allegations of the Complaint

10       As a general background, plaintiffs allege that they are the surviving spouse (Mary

11   Pauline Edwards) and children (all other plaintiffs) of decedent James Edwards ("decedent"), an

12   inmate at California State Prison – Solano ("CSP-Solano") who died on March 21, 2013, due to

13   "[c]ardiopulmonary arrest secondary to sudden death from critical aortic stenosis."  (ECF No. 1 at

14   ¶¶ 1-5, 65-67.)  Plaintiffs allege that they are all heirs to decedent's estate.  (Id. at ¶ 67.)  Plaintiffs

15   allege that decedent was incarcerated at CSP-Solano following his 2005 conviction and was under

16   the care of the defendants named in this action at various times thereafter until his death on March

17   21, 2013.  (Id. at ¶ 20.)  Plaintiffs attach to their complaint a number of medical records relating

18   to the medical care defendants provided to decedent between 2010 and his death in 2013.  (Id. at

19   25-137 (Exhibits 1-20).)

20       With regard to defendants Hsieh, McAlpine, McCue, Shadday, and Lipson, plaintiffs

21   allege that they are physicians who, at various times, worked at CSP-Solano, and who, in assorted

22   capacities, provided medical care to decedent during his imprisonment that began following his

23   2005 conviction.  (Id. at 2-3.)  Plaintiffs allege that defendant Swarthout was the Warden of CSP-

24   Solano during the time decedent was incarcerated.  (Id. at 3.)  Plaintiffs allege that defendant

25

26   remainder of the hearing.  Nevertheless, after being disconnected, she communicated to the court
     via text messages sent to the other plaintiffs that the other plaintiffs read aloud to the court stating
27   that she desired the hearing proceed despite her telephonic absence.  Accordingly, the court
     considers Thaut to have made a proper appearance at the hearing despite the technological issues
28   preventing her from maintaining her telephonic presence during the entirety of the hearing.

County of San Joaquin owned and operated the San Joaquin General Hospital ("SJGH") where

decedent received medical care.  (Id.)  Plaintiffs allege that defendants Nand and Dharawat were

physicians who worked at SJGH and oversaw decedent's medical care while he was there.  (Id.)

On March 23, 2010, when decedent was 78 years old, he was referred to Vacavalley

Hospital for an echocardiogram.  (Id. at 97.)  The results from this test indicated that plaintiff's

heart had a left atrial enlargement, moderate aortic stenosis, and preserved left ventricular

function.  (Id.)  In August of 2010, an additional echocardiogram was performed on decedent at

SJGH, resulting in a finding of "moderate valvular aortic stenosis."  (Id. at 115.)

Plaintiffs allege that throughout the course of 2010, 2011, and 2012, decedent was

examined and treated by defendants Hsieh, McAlpine, McCue, Shadday, and Lipson at CSP-

Solano on a number of occasions.  (Id. at ¶¶ 21-25.)  Plaintiffs allege that these doctors were

either one of decedent's primary care physicians or supervised decedent's healthcare at CSP-

Solano, had complete access to decedent's medical records, and were "personally aware" of

decedent's "aortic stenosis symptoms."  (Id. at ¶¶ 21-25.)  Plaintiffs further allege that these

doctors personally signed off on a number of decedent's medical reports that were issued during

this period, which indicate that these doctors were aware of decedent's symptoms of aortic

stenosis.  (Id.)

During this time, these defendants generally described decedent as presenting no

symptoms of major cardiac problems and prescribed medications for his heart condition.

(See,e.g., id. at 31, 35 (decedent telling Hsieh that "he is doing well" and "has no complaints"),

36, 43-44, 48 ("denies any chest pain, chest pressure, chest palpitations, sob (shortness of breath),

nausea, or vomiting."), 73.)  These doctors' notes also state that decedent generally refused to

take most medications that he had been prescribed.  (E.g., id. at 26, 28, 36-37, 51, 54 (decedent

"state[s] he does not want to take the medications given by CDCR"), 55 ("[R]efuses Zocor,

aspirin, isosorbide, mononitrate, sl nitro as well.  Refusal form signed on 12/2/11."), 61

("[Decedent] is recalcitrant & will not take his regimen."), 73.)  While plaintiffs allege that these

doctors never informed decedent that he suffered from a life threatening condition and would

require surgery to avoid sudden death, (id. at ¶ 45), the attached medical records indicate that

1   these doctors informed decedent of the potential adverse health consequences that he could face if

2   he decided not to take his prescribed medications.  (E.g., id. at 56, 61, 74.)

3        On March 11, 2013, at the age of 81, decedent suffered from a syncopal episode and his

4   son, plaintiff David Edwards, who was also incarcerated at CSP-Solano, allegedly gave decedent

5   sublingual nitroglycerin due to a concern that decedent was suffering from a heart attack.  (Id. at

6   11, 91.)  Decedent was then taken by ambulance to Vacavalley Hospital for emergency medical

7   treatment, where he was monitored in the cardiac unit and a 2D echocardiogram was taken that

8   indicated that decedent had severe aortic stenosis.  (Id. at 11, 91-95.)  Nevertheless, the summary

9   of this stay attached to the complaint notes that decedent did not complain of any chest pains and

10  did not exhibit any shortness of breath, nausea, or vomiting.  (Id. at 91.)

11       Later in the day on March 11, 2013, decedent was transferred from Vacavalley Hospital to

12  SJGH for further management, with a recommendation for "cardiology evaluation to see if aortic

13  valve replacement is required."  (Id.)  Plaintiffs allege that this transfer was made "[p]ursuant to

14  [a] custom, policy, and/or contractual agreement" between CSP-Solano, Vacavalley Hospital, and

15  SJGH, wherein the latter two defendants agreed to provide outside medical services to inmates

16  housed at CSP-Solano.  (Id. at ¶¶ 57-58.)  Plaintiffs further allege that defendant Swarthout, as

17  Warden of CSP-Solano, "allow[ed decedent] to be transferred from defendant Vacavalley to

18  defendant SJGH for monetary and contractual reasons, and not for [decedent's] known specific

19  medical needs."  (Id. at ¶ 79.)  During his time at SJGH, decedent was under the care and medical

20  supervision of defendants Nand and Dharawat.  (Id. at ¶¶ 56, 86.)

21       On March 12, 2013, a transthoracic echocardiogram performed at SJGH found that

22  decedent had "thickened and calcified aortic leaflets with reduced excursion."  (Id. at 126.)  The

23  next day, a cardiac catheterization was performed revealing "severe three-vessel disease,"

24  occluded grafts from a prior bypass surgery, and "severe aortic stenosis."  (Id. at 88.)  Based on

25  these findings, Dharawat recommended that decedent undergo "aortic valve replacement surgery,

26  probably mitral valve repair or annuloplasty, and possibly diagonal and right coronary artery

27  bypass surgery."  (Id.)  Plaintiffs allege that, despite this recommendation, SJGH was not able to

28

4

1   perform such an intervention and that defendant SJGH, Nand, and Dharawat failed to

2   immediately transfer decedent to a facility that could perform such surgery.  (Id. at 19, 123.)

3       While SJGH's Cardiology Department was working decedent up further, decedent

4   suffered a heart attack "for which [decedent] refused to be on Plavix, Lovenor, [or] any other

5   antiplatelet or anticoagulation [medication] because of his history of bleeding," despite being

6   "extensively counseled by several physicians during this admission."  (Id. at 123.)  By about

7   March 14, 2013, decedent "start[ed] to have abdominal distension and [was] found to have [a]

8   small bowel obstruction . . . with nausea and vomiting as initial symptoms."  (Id.)  On this date, a

9   naso-gastric ("NG") tube was used on decedent, resulting in mild improvement of symptoms.  (Id.

10  at 124, 136.)  On March 15, 2103, decedent "refused [an] NG tube."  (Id.)  By the next day,

11  decedent's abdomen became more distended, but he again refused an NG tube.  (Id.)

12      Around March 14, 2013, decedent had been recommended "to be transferred to a tertiary

13  care center for high risk surgical patient secondary to his cardiac disease."  (Id. at 124.)  However,

14  "the complicating factor . . . was that [decedent] could not have valvular surgery because of his

15  [bowel] obstruction and he could not have abdominal surgery for lysis of adhesions secondary to

16  a prior history of abdominal surgery given his critical aortic stenosis."  (Id.)

17      Decedent was initiated for transfer to a tertiary care center on March 21, 2013.  (Id.)

18  However, that evening, before the transfer occurred, decedent "suddenly went bradychardiac and

19  went into [pulseless electrical activity]."  (Id.)  Resuscitation efforts were performed for between

20  50 and 55 minutes, but decedent could not be revived.  (Id.)  Decedent was pronounced dead at

21  10:53 on March 21, 2013, with "[c]ardiopulmonary arrest secondary to sudden death from critical

22  aortic stenosis" being the cause of death.  (Id. at 123-24.)

23      Based on the above factual allegations, plaintiffs assert the following causes of action.

24  First, they claim that defendants Hsieh, McAlpine, McCue, Shadday, and Lipson violated

25  decedent's Eighth Amendment rights by acting with deliberate indifference to decedent's serious

26  heart condition and need for immediate medical care, which resulted in decedent experiencing

27  pain, suffering, and mental and emotional anguish in the years prior to his death.  (Id. at ¶¶ 68-

28  76.)  With regard to this claim, plaintiffs allege that these physician defendants failed to conduct

1   follow-up examinations and generally provide decedent proper care between the diagnosis of

2   decedent's heart condition in 2010 and his death in 2013 even though these defendants were

3   aware of decedent's condition and need for medical care.  (Id. at ¶¶ 72-74.)

4        Second, plaintiffs allege that all defendants are liable in their individual capacities, with

5   defendant Swarthout being also liable in his official capacity, under the Eighth Amendment for

6   their deliberate indifference to decedent's serious medical need, which resulted in decedent's

7   death.  (Id. at ¶¶ 77-91.)  Plaintiffs allege that all defendants failed to "reasonably respond and

8   ensure that [decedent] was immediately taken to a healthcare facility that employs a

9   cardiothoracic surgeon capable of aortic valve replacement surgery."  (Id. at ¶ 78.)  Specific to

10  Swarthout, plaintiffs allege that he allowed decedent to be transferred from Vacavalley to SJGH

11  "for monetary and contractual reasons, and not for [decedent's] known specific medical needs,"

12  which proximately caused decedent's death.  (Id. at ¶ 79.)  Plaintiffs further allege that from

13  about March 11, 2013 to March 21, 2013, Swarthout denied plaintiffs' requests to visit decedent

14  in the hospital, denied plaintiffs the ability to confer with the doctors at the hospital, and denied

15  plaintiff Thaut participation in decedent's immediate medical care despite being legally appointed

16  to do so under decedent's Advanced Directive for Healthcare.  (Id. at ¶¶ 80-81.)  Specific to

17  defendants Nand and Dharawat, plaintiffs allege that they "failed to respond to [decedent's]

18  serious medical need, by conducting redundant and unnecessary tests for a known heart condition

19  they could not treat," by keeping him "in their care for approximately 10 days in critical condition

20  of sudden death," and by not transferring him to a facility that could provide him with the care he

21  needed.  (Id. at ¶¶ 85-87.)

22       Finally, plaintiffs allege that all defendants excluding County of San Joaquin are liable for

23  punitive damages as a result of their respective actions demonstrating "reckless indifference, ill

24  will, malice and the like," which caused decedent's death.  (Id. at ¶¶ 92-104.)  Plaintiffs style this

25  request for punitive damages as a "Third Cause of Action" that is largely premised on the same

26  conduct alleged in the first two causes of action. [2]

27  _____

28  [2] "In California there is no separate cause of action for punitive damages."  McLaughlin v. Nat'l
    Union Fire Ins. Co., 23 Cal.App.4th 1132, 1164 (1994).  To obtain punitive damages, a plaintiff

1    II.    Legal Standards for Motions to Dismiss

2         A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

3    challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

4    Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

5    of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

6    plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

7    also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

8    a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

9    is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

10   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

11   factual content that allows the court to draw the reasonable inference that the defendant is liable

12   for the misconduct alleged."  Id.

13        In considering a motion to dismiss for failure to state a claim, the court accepts all of the

14   facts alleged in the complaint as true and construes them in the light most favorable to the

15   plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

16   however, required to accept as true conclusory allegations that are contradicted by documents

17   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

18   conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

19   1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

20   prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

21   to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

22   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

23   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

24   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

25   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

26   _____

27   must first prove that there was a tortious act that gave rise to actual, presumed, or nominal
     damages.  Id.  Therefore, the court construes the complaint to allege that plaintiffs are entitled to
     punitive damages as a result of defendants' alleged Eighth Amendment violations asserted in the

28   first two causes of action.

1    evaluating them under the standard announced in Iqbal).

2          In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

3    consider only allegations contained in the pleadings, exhibits attached to the complaint, and

4    matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

5    F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

6    consider a memorandum in opposition to a defendant's motion to dismiss to determine the

7    propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

8    1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

9    whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

10   2003).

11   III.   Motion to Dismiss Filed by Hsieh, Lipson, McAlpine, McCue, Shadday, and

12          Swarthout

13          Defendants Hsieh, Lipson, McAlpine, McCue, Shadday and Swarthout argue that they

14   should all be dismissed from this action with prejudice pursuant to Federal Rule of Civil

15   Procedure 12(b)(6) because the allegations in the complaint are not sufficient to demonstrate that

16   any of them acted with deliberate indifference to decedent's serious medical needs in violation of

17   the Eighth Amendment.

18          A.     Request for Judicial Notice

19          As an initial matter, defendants request that the court take judicial notice of the following

20   6 documents filed in support of their motion to dismiss:

21   1)   A document entitled "What are the Symptoms of Atrial Fibrillation (AFib or AF)?"

22        publically available on the website of the American Heart Association at

23        http://www.heart.org/HEARTORG/Conidtions/Arrhythmia/AboutArrhythmia.

24   2)   The Order appointing the CDCR Healthcare Receiver in Plata v. Schwarzenegger, U.S.

25        Dist. Court, Northern Dist. of California, Case No. C01-1351 TEH, signed February 14,

26        2006.

27

28

3) A Press Release from California Prison Health Care Services entitled "Receiver-backed Contract Cap to Save Taxpayers $50m: SBX4 13 Aligns Payments for Contracted Inmate Medical Services Close to MediCare Rates", dated Monday, August 10, 2009.

4) The California Correctional Health Care Services Medical Contracts statement of purpose, publically available from official government website at www.cdcr.ca.gov/Divisions_Boards/Plata/index.html.

5) A document entitled "Prison Health Care Provider Network Project – Project Fact Sheet," publically available from official government website at www.cphcs.ca.gov/docs/projects/PHCPN_FactSheet_20101223.pdf.

6) California Correctional Healthcare Services, Inmate Medical Services Policies & Procedures, Volume 1: Governance and Administration, Chapter 17B, Advance Directive For Healthcare, released 9/16/09.

(ECF Nos. 17, 17-2 at Exhibits A-F.)

> 1.    Relevant Legal Standards

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b) (1984). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d) (1984). Judicially noticed facts often consist of matters of public record, such as prior court proceedings, see, e.g., Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988); administrative materials, see, e.g., Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); or other court documents, see, e.g., Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record). Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

////

1    Generally, a court may not consider material beyond the complaint in ruling on a motion

2    to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Lee v. City of Los Angeles, 250

3    F.3d 668, 688 (9th Cir. 2001).  "However, '[a] court may take judicial notice of 'matters of public

4    record' without converting a motion to dismiss into a motion for summary judgment,' as long as

5    the facts noticed are not 'subject to reasonable dispute.'"  Intri-Plex Technologies, Inc. v. Crest

6    Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee, 250 F.3d at 689 (citation omitted));

7    see also United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).

8         2.    Discussion

9    The court grants judicial notice with respect to all of the documents these defendants

10   request because they are readily verifiable documents either filed in another court action or

11   publically available on the websites of a government agency.  See, e.g., Emrich, 846 F.2d at 1198;

12   Barron, 13 F.3d at 1377; Rothman, 220 F.3d at 92.  Moreover, plaintiffs do not genuinely dispute

13   the facts defendants seek to judicially notice.  For instance, plaintiffs expressly acknowledge and

14   cite to the documents relating to the order issued in Plata v. Schwarzenegger and CDCR's

15   healthcare receivership in their opposition to defendants' motion to dismiss.  (See ECF No. 26 at

16   17-19.)  Accordingly, judicial notice of the requested documents is proper.

17   B.    *Merits of the Motion to Dismiss*

18   Both of the causes of action asserted in the complaint allege that defendants acted with

19   deliberate indifference to decedent's serious medical needs in violation of the Eighth Amendment

20   to the United States Constitution.[3]  Plaintiffs assert both of their Eighth Amendment claims under

21   42 U.S.C. § 1983.

22        1.    Legal Standards

23             a.    *General Requirements of 42 U.S.C. § 1983*

24   Section 1983 does not provide substantive rights; rather, it is "a method for vindicating

25   federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (citations and

26

27   [3] As discussed above, the court construes plaintiffs' "Third Cause of Action" as a request for
     punitive damages based on the conduct alleged with regard to the first two causes of action, rather
28   than as its own separate claim.

                                                  10

internal quotation marks omitted).  In pertinent part, Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To sufficiently plead a cognizable Section 1983 claim, a plaintiff must allege facts from which it may be inferred that (1) he or she was deprived of a federal right, and (2) a person who committed the alleged violation acted under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).  Additionally, a plaintiff must allege that he or she suffered a specific injury and show a causal relationship between the defendant's conduct and the injury suffered.  See Rizzo v. Goode, 423 U.S. 362, 371-72 (1976).

b.     <em>Eighth Amendment Deliberate Indifference</em>

Inadequate medical care does not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted).

To establish deliberate indifference, a plaintiff must show that defendants knew of and disregarded an excessive risk to his health or safety.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A defendant must "both be aware of facts from which the inference could be drawn that a

1    substantial risk of serious harm exists, and he must also draw the inferences."  Id.  The nature of a

2    defendant's responses must be such that the defendant purposefully ignores or fails to respond to

3    a prisoner's pain or possible medical need in order for deliberate indifference to be established.

4    McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds,

5    WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  Deliberate indifference may

6    occur when defendants deny, delay, or intentionally interfere with medical treatment, or may be

7    demonstrated by the way in which defendants provide medical care.  Id. at 1059-60.

8            A showing of merely inadvertent or even negligent medical care is not enough to establish

9    a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th

10   Cir. 1998).  A mere difference of opinion concerning the appropriate treatment cannot be the

11   basis for an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.

12   1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, the plaintiff must allege

13   facts sufficient to indicate a culpable state of mind on the part of the defendant.  Wilson v. Seiter,

14   501 U.S. 294, 297-99 (1991).  Accordingly, a difference of opinion about the proper course of

15   treatment does not constitute deliberate indifference, nor does a dispute between a prisoner and

16   defendant over the necessity for or extent of medical treatment amount to a constitutional

17   violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild,

18   891 F.2d 240, 242 (9th Cir. 1989).  A defendant does not act with deliberate indifference if their

19   response to the risk is reasonable, even if that response is ultimately unsuccessful.  Farmer, 511

20   U.S. at 844-45.

21                  2.    Discussion

22                        a.    *Serious Medical Need*

23           Defendants do not contend that the complaint fails to allege facts sufficient to show that

24   decedent had a serious medical condition for Eighth Amendment purposes.  To the contrary, they

25   concede that decedent's aortic stenosis and other medical conditions constituted a serious medical

26   condition.  Accordingly, when the allegations of the complaint are taken as true, this first

27   requirement for a deliberate indifference claim is satisfied.

28   ////

b.      *Deliberate Indifference*

i.      <u>Hsieh, McAlpine, McCue, Shadday, and Lipson</u>

With regard to Hsieh, Lipson, McAlpine, McCue and Shadday, defendants argue that the medical records plaintiffs attach as exhibits to their complaint demonstrate that these physicians did not act with deliberate indifference to the medical issues presented by plaintiff's heart condition.  Defendants assert that these documents show that these five defendants routinely examined decedent and proscribed him medication, which he largely declined to take despite these defendants' insistence.  Defendants further argue that the attached documents show that decedent had only "moderate" aortic stenosis throughout much of the relevant time period, that decedent did not complain of any major complications arising from his heart condition when these defendants examined him, and that these defendants reasonably responded to decedent's claimed medical needs each time they examined him.  Defendants argue that when these alleged facts are considered in the context of the rest of the complaint, they clearly demonstrate that none of these five defendants' conduct exhibited the highly culpable state of mind required to show deliberate indifference.  Defendants' arguments are well taken.

The medical records plaintiffs attach to the complaint generally show that these physicians' respective actions did not meet the high threshold necessary to demonstrate deliberate indifference.  The attached documentation shows that none of these physicians denied, delayed, or intentionally interfered with decedent's medical treatment.  Indeed, they demonstrate that these doctors examined and treated decedent regularly during the period between his diagnosis of aortic stenosis and his admission for care at an outside facility on March 11, 2013.  (<u>See</u> ECF No. 1 at 25-78.)

Furthermore, the attached medical records demonstrate that the way in which defendants provided medical care to decedent does not support a claim of deliberate indifference.  For instance, plaintiffs' allegations in the complaint that these physicians knew that decedent was suffering from "severe" aortic stenosis are contradicted by these records, <u>Paulsen</u>, 559 F.3d at 1071 (the court is "not . . . required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth

13

1   of legal conclusions merely because they are cast in the form of factual allegations"), which

2   indicate that plaintiff was diagnosed with only "moderate" aortic stenosis in 2010, and was not

3   diagnosed as "severe" until much later when he was admitted to outside care.  (See id. at 92, 97,

4   115.)  The attached treatment records also demonstrate that these defendants prescribed and

5   encouraged decedent to take a number of different medications with the intention of managing

6   decedent's heart condition while he was under their care, but that he declined to take many of the

7   medications that were prescribed even when these defendants informed him of the risks in doing

8   so.  (See,e.g., id. at 26, 28, 36-37, 51, 54-55, 61, 73.)  These documents, which are considered a

9   part of the complaint for purposes of defendants' motion to dismiss, demonstrate that these

10  defendants' responses to the medical risks posed by decedent's heart condition were reasonable.

11  The fact that these responses were ultimately unsuccessful does not give rise to a cognizable

12  claim under the deliberate indifference standard.  See Farmer, 511 U.S. at 838-39.

13         Plaintiffs argue in their opposition that just because these five defendants regularly

14  examined decedent and prescribed him certain medications to treat his condition does not mean

15  that they did not act with deliberate indifference to decedent's serious medical needs because the

16  medications prescribed by these defendants "were irrelevant to treating deceased's diagnosed

17  disease of aortic stenosis."  (ECF No. 26 at 4.)  However, plaintiffs' disagreement with these

18  doctors regarding the effectiveness of the medications they proscribed is insufficient to support a

19  claim for deliberate indifference.  See, e.g., Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d

20  at 242.  Similarly plaintiffs' assertion that these doctors were deliberately indifferent because the

21  allegations show that they failed to attribute the symptoms decedent experienced to his aortic

22  stenosis, and instead attributed these symptoms to other health conditions, is also without merit.

23  Such allegations, which at the most indicate that these defendants may have given decedent

24  negligent medical care, are not severe enough to establish a constitutional violation.  Estelle, 429

25  U.S. at 105-06.  For this same reason, plaintiffs' arguments regarding what treatment these

26  defendants should have provided and that their treatment of decedent fell below established

27  medical practices for treatment of aortic stenosis are also insufficient to establish deliberate

28  indifference.  See id.

Because the allegations in the complaint, when taken as true, fail to demonstrate that Hsieh, Lipson, McAlpine, McCue or Shadday acted with deliberate indifference towards decedent's serious heart condition, plaintiffs' Eighth Amendment deliberate indifference claims against these defendants are dismissed.  However, as the undersigned discussed with the parties during the hearing on this matter, there is at least some possibility that plaintiffs may be able to provide additional allegations with regard to these defendants that could give rise to a cognizable deliberate indifference claim.  Accordingly, the court grants plaintiffs leave to amend their complaint with regard to defendants Hsieh, Lipson, McAlpine, McCue, and Shadday.[4]

i.   Swarthout

Plaintiffs allege that Swarthout, in his role as warden of CSP-Solano, "was responsible for contractual agreements and policies for outside healthcare of inmates," including decedent.  (ECF No. 1 at ¶ 26.)  Plaintiffs further allege that Swarthout "breached his constitutional duty" to decedent "by allowing" decedent to be transferred from Vacavalley Hospital to SJGH "for monetary and contractual reasons, and not for [decedent's] known specific medical needs."  (Id. at ¶ 79.)  Plaintiffs claim that this act constituted deliberate indifference and directly caused decedent's death.  (Id.)

Defendants argue that these allegations are insufficient to state an Eighth Amendment deliberate indifference claim against Swarthout because the judicially-noticed documents demonstrate that Swarthout had no role in entering into a contract with Vacavalley Hospital or

---

[4] As discussed on the record during the hearing, plaintiffs may desire to consult with a physician or other medical expert with regard to obtaining a declaration or other statement as to whether the conduct plaintiffs allege with regard to these defendants could indicate that they acted with deliberate indifference to decedent's serious medical need in order to attach it to their amended complaint.  However, plaintiffs are under no obligation to obtain and provide such information with an amended complaint, should plaintiffs choose to file one.  Furthermore, plaintiffs are informed that while the court expressed that such information could be helpful in determining whether the already-alleged facts could support a basis for a deliberate indifference claim against these defendants, there is no guarantee that such information will be sufficient to defeat a future motion to dismiss the amended complaint on grounds that it fails to state a deliberate indifference claim against some or all of these defendants.  Similarly, the absence of such supporting information from a future amended complaint will not mean that the court will consider the amended complaint insufficient to support a deliberate indifference claim against some or all of these defendants.

1    SJGH for inmate healthcare services.  Defendants assert that the power to enter into such

2    agreements was solely within the power of CDCR's Healthcare Receiver appointed in <u>Plata v.</u>

3    <u>Schwarzenegger</u>.  Indeed, the judicially-noticed facts establish that the Receiver is responsible for

4    the "administration, control, management, operation, and financing of the California prison

5    medical health care system," (ECF No. 17-3 at 7), and that the Office of the Receiver contains a

6    "Medical Contracts" division that "[i]s responsible for processing efficient and cost effective

7    medical service contracts . . . to CDCR Institutions/headquarters."  (ECF No. 17-3 at 16.)

8         Plaintiffs argue in their opposition that while the <u>Plata</u> order does place CDCR's powers

9    and duties regarding its administration of prisoner healthcare in the Receiver's hands; this order

10   only relieves CDCR's Secretary of his powers over the inmate healthcare system, not the wardens

11   of individual prisons.  Plaintiffs assert that Swarthout still had the responsibility for the prison's

12   "contractual procedures, policies, and arrangements" with outside healthcare providers pursuant

13   to his powers as warden of CSP-Solano that are enumerated in California Code of Regulations,

14   Title 15 §§ 3350.2, 3353, 3354, and 3380.  (ECF No. 26 at 17-18.)  However, a review of these

15   regulations fails to establish that they granted any such powers to Swarthout in his capacity as

16   warden of CSP-Solano.  Perhaps in light of this fact, plaintiffs state in their opposition that "[i]f

17   plaintiffs discover that someone other than defendant Swarthout is responsible [for this alleged

18   activity] after the production of documents, then plaintiffs will move to amend [their] civil

19   complaint."  (ECF No. 26 at 18.)  Because the judicially-noticed facts establish that Swarthout

20   was not responsible for the contractual arrangements with Vacavalley Hospital and SJGH

21   regarding the provision of inmate healthcare services, the allegations in the complaint to that

22   effect fail to state a plausible cause of action.

23        Plaintiffs further allege that Swarthout exhibited reckless indifference by denying them

24   the ability to visit decedent in the hospital, denying them access to consult with hospital staff

25   despite plaintiff Thaut being identified as decedent's primary agent in decedent's Advance

26   Directive for Health Care, and not allowing Thaut to pay for decedent's medical care.  (ECF No.

27   1 at ¶¶ 80, 81, 82, 98.)  Further, they allege that Swarthout showed ill will and malice by not

28   contacting plaintiffs when decedent was taken by ambulance to the hospital.  (<u>Id.</u> at ¶ 99.)  Such

16

allegations, however, fail to state a cause of action under the Eighth Amendment's deliberate indifference standard.  First, plaintiffs' allegations that Swarthout did not permit them to pay for decedent's healthcare and did not contact them when decedent was taken to the hospital are insufficient to state a deliberate indifference claim because there is no plausible way these actions could have caused decedent's death; as plaintiffs allege, decedent was incarcerated by and under the care of CDCR, which provided decedent with medical care regardless of whether Thaut or any other plaintiff offered to pay.  With respect to the allegations concerning the Advanced Directive, the documents attached to the complaint, which include a copy of the Advanced Directive,[5] establish that decedent's Directive was never in operation because it was never declared by plaintiff's primary physician that decedent had lost his decision making capacity during his time in the hospital prior to his death.  (See ECF No. 1 at 82, 92, 123-24, 136.)

In sum, the complaint fails to allege a cognizable Eighth Amendment deliberate indifference claim against Swarthout.  Furthermore, based on the attachments to the complaint and the judicially-noticed facts, it appears that amendment of plaintiffs' allegations as to this defendant would be futile as they cannot establish that Swarthout personally contracted for outside healthcare services with Vacavalley and SJGH.  Accordingly, the court recommends that plaintiffs' claims against Swarthout be dismissed from this action without leave to amend.

IV.   <u>Motion to Dismiss Filed by Dharawat, Nand, and County of San Joaquin</u>

Defendants Dharawat, Nand and County of San Joaquin request the court to dismiss plaintiffs' claims against them without leave to amend on the grounds of:  (1) the doctrine of claim preclusion; and (2) plaintiffs' failure to properly state an Eighth Amendment deliberate indifference claim.

////

////

---

[5] The Advanced Directive attached to the complaint "allows [decedent] to choose someone to make medical decisions for [him] when [he is] unable to make them for [himself]."  (ECF No. 1 at 129.)  The Directive further states that decedent's "agent's authority becomes effective when [his] primary physician determines that [he] is unable to make [his] own healthcare decisions."  (Id. at 131.)  Plaintiff Thaut is named as decedent's "Primary Agent" under the Directive.  (Id. at 130.)

A.    *Request for Judicial Notice*

In support of their motion to dismiss, defendants request that the court take judicial notice of the following 5 documents:

1) The complaint filed in Solano County Superior Court case number FSC043349, filed on or about April 16, 2014;

2) A demurrer filed by County of San Joaquin and Priyasheelta Nand, MD in Solano County Superior Court case number FSC043349 on June 2, 2014;

3) Plaintiffs' request for dismissal of County of San Joaquin and Priyasheelta Nand, MD with prejudice in Solano County Superior Court case number FSC043349, filed July 2, 2014;

4) A notice of entry of dismissal filed in Solano County Superior Court case number FSC043349 on July 21, 2014;

5) Plaintiffs' complaint for damages filed in the present action at ECF No. 1.

(ECF No. 19.)

Judicial notice is proper for the 4 documents filed in Solano County Superior Court case number FSC04334 because all of these documents involve matters of public record in related judicial proceedings and are not subject to reasonable dispute.  See Biggs v. Terhune, 334 F.3d 910, 916 n.3 (9th Cir. 2003) ("Materials from a proceeding in another tribunal are appropriate for judicial notice."), overruled on other grounds by Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010); Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of the docket in a related case).  Therefore, the court grants defendants' request as to these documents.  Similarly, plaintiffs' complaint in the present action is also a judicially-noticeable document that is not subject to reasonable dispute.  See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Coats v. McDonald, 2010 WL 2991716, at *2 (E.D. Cal. July 29, 2010) (noting "[a] court may take judicial notice of court records" and taking judicial notice of the plaintiff's complaint).  Accordingly, the court also takes judicial notice of this document.

1

B.       *Merits of Motion to Dismiss*

2

1.       Claim Preclusion

3

a.       *Legal Standards*

4

Claim preclusion, also known as res judicata, "bars litigation in a subsequent action of any

5

claims that were raised or could have been raised in the prior action."  Owens v. Kaiser

6

Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (quoting Western Radio Servs.

7

Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997)) (internal quotation marks omitted).

8

Generally, when federal-court jurisdiction is based on the presence of a federal question, federal

9

preclusion doctrine applies.  See Taylor v. Sturgell, 553 U.S. 880, 891 (2008); see also Heiser v.

10

Woodruff, 327 U.S. 726, 733 (1946).  However, whether a prior judgment by a state court

11

precludes a subsequent section 1983 action in federal court is a matter of state law.  Migra v.

12

Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) ("It is now settled that a federal court

13

must give to a state-court judgment the same preclusive effect as would be given that judgment

14

under the law of the State in which the judgment was rendered.").  Under California law, an

15

action is precluded by res judicata if:  (1) there has been a final determination on the merits, (2)

16

on the same cause of action, (3) between the same parties or parties in privity with them.  Tensor

17

Group v. City of Glendale, 14 Cal. App. 4th 154, 160 (1993).

18

"California law approaches the [cause of action] issue by focusing on the 'primary right'

19

at stake:  if two actions involve the same injury to the plaintiff and the same wrong by the

20

defendant then the same primary right is at stake even if in the second suit the plaintiff pleads

21

different theories of recovery, seeks different forms of relief and/or adds new facts supporting

22

recovery."  Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1174 (1983) (citing Slater v.

23

Blackwood, 15 Cal. 3d 791, 795 (1975)).  "If the same primary right is involved in two actions,

24

judgment in the first bars consideration not only of all matters actually raised in the first suit, but

25

also all matters which could have been raised."  Id. at 1175.  "Thus, under the primary rights

26

theory, the determinative factor is the harm suffered."  Boeken v. Philip Morris USA, Inc., 48

27

Cal.4th 788, 798 (2010).

28

"Under California law, voluntary dismissal of an action with prejudice constitutes final determination on the merits and satisfies the requirement for res judicata." Sierra Mgmt., Inc. v. City of Sonoma, 1996 WL 147632, at *3 (N.D. Cal. Mar. 27, 1996) (citing Roybal v. Univ. Ford, 207 Cal. App. 3d 1080, 1085 (1989)).

In order to meet the third prong of the res judicata analysis under California law, a party to the present action must have either been a party to or in privity with a party in the prior action. A party may be considered to be in privity "when, in certain limited circumstances, [that party], although not a party [to the previous litigation], has his interests adequately represented by someone with the same interests who [was] a party [to that litigation]." Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 798 (1996) (quoting Martin v. Wilks, 490 U.S. 755, 762 n.2 (1989)). However, the fact that a party to the present action could have been joined as a party in the prior action is of little or no significance to determining privity when that party was not actually joined. See Pancoast v. Russell, 148 Cal. App. 2d 909, 914 (1957). Similarly, the existence of a principle-agent relationship between a party to the previous litigation and a non-party does not necessarily signal the existence of privity. Generally, the liability of the principle or agent that was not a party to the prior lawsuit must be "derivative from or dependent upon the culpability of" the principle or agent who was a party in the original action. Triano v. F.E. Booth & Co., 120 Cal. App. 345 (1932) (citing Bradley v. Rosenthal, 154 Cal. 420, 97 P. 875 (1908)).

b. *Discussion*

i.   Final Adjudication on the Merits

Here, there has been a final determination on the merits in a prior state court action with regard to defendants Nand and County of San Joaquin because the judicially-noticed documents demonstrate that all plaintiffs voluntarily dismissed their causes of action against defendants Nand and County of San Joaquin from their state court action with prejudice. (ECF No. 19 at 76.) This constituted a final determination on the merits for res judicata purposes under California state law. Roybal, 207 Cal. App. 3d at 1085.

////

////

1  Plaintiffs argue that there was no final adjudication in their state court action with regard

2  to these two defendants because they voluntarily dismissed both defendants solely for the reason

3  that these defendants filed a demurrer to plaintiffs' state court complaint that correctly argued that

4  plaintiffs failed to first present their state-law tort claims asserted in that action against these

5  defendants to the proper agency prior to filing their complaint.  Plaintiffs assert that a finding that

6  the voluntary dismissal with prejudice was a final adjudication on the merits would be improper

7  in this instance because there is no claim presentation requirement for plaintiffs' section 1983

8  claims asserted in this action, which was the only reason they decided to dismiss Nand and

9  County of San Joaquin from their state court action.  This argument, however, is unavailing.

10  Under California law, the reason behind a voluntary dismissal with prejudice does not affect the

11  impact that dismissal for purposes of determining whether it constituted a final adjudication on

12  the merits.  See Roybal, 207 Cal. App. 3d at 1085; Johnson v. San Joaquin Cnty. Sheriff's Dep't,

13  2015 WL 1499086, at *3 (E.D. Cal. Mar. 31, 2015) (finding that plaintiff's voluntary dismissal of

14  state tort action with prejudice constituted a final judgement on the merits for res judicata

15  purposes under California law when the plaintiff dismissed the state court action because the

16  defendant had filed a demurrer arguing that plaintiff failed to timely file a government tort claim).

17  Accordingly, there was a final adjudication on the merits in plaintiffs' prior state court action for

18  res judicata purposes under California law.[6]

19  ////

20  ////

---

21  [6] Plaintiffs stated on the record at the hearing that they will be seeking to vacate their state court

22  dismissal with prejudice through a procedural motion filed in state court because the dismissal
    with prejudice was a mere administrative error on plaintiffs' part.  If plaintiffs are able to vacate

23  this prior dismissal through this purported state court motion, then they may file a motion in this
    court requesting it to reconsider the grant of this motion to dismiss against Nand and County of

24  San Joaquin on claim preclusion grounds in light of evidence showing that the state court vacated
    plaintiffs' dismissal.  However, unless and until plaintiffs are able to successfully vacate the state

25  court dismissal with prejudice and prove to this court that such a determination was made, the
    effect of that dismissal still precludes plaintiffs' claims against Nand and County of San Joaquin.

26  Furthermore, as discussed below, the court finds not only that dismissal of Nand and County of
    San Joaquin is proper on claim preclusion grounds, but also because plaintiffs' current complaint

27  fails to allege facts sufficient to state an Eighth Amendment deliberate indifference complaint

28  against these two defendants.

21

While plaintiffs' state court action was based on state tort law and their present claims are premised as Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983, this difference is of no consequence to a determination under California's "primary rights" analysis because the claims asserted in the prior action and the present action are all based on the exact same factual background and alleged injury, i.e. decedent's suffering of pain, and ultimately death, due to defendants' action, or inaction, while decedent was in defendants' care.  See Boeken, 48 Cal. 4th at 798; Eichman, 147 Cal. App. 3d at 1175; Johnson, 2015 WL 1499086, at *4 (finding plaintiff's section 1983 claim to assert the same "primary right" as negligence claim asserted in prior state action because both claims were based on the same alleged action and injury).  Furthermore, plaintiffs could have brought their section 1983 claims based on deliberate indifference against Nand and County of San Joaquin in their state court lawsuit, but failed to do so.  See Clark v. Yosemite Community College Dist., 785 F.2d 781, 786 (9th Cir. 1986) ("A section 1983 claim may be brought in California state courts.").  Under California's claim preclusion doctrine, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date."  Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 897 (2002).

ii.      Same Primary Rights

While plaintiffs' state court action was based on state tort law and their present claims are premised as Eighth Amendment claims brought under 42 U.S.C. § 1983, this difference is of no consequence to a determination under California's "primary rights" analysis because the claims asserted in the prior action and the present action are all based on the exact same factual background and alleged injury, i.e. decedent's suffering of pain, and ultimately death, due to defendants' action, or inaction, while decedent was in defendants' care.  See Boeken, 48 Cal. 4th at 798; Eichman, 147 Cal. App. 3d at 1175; Johnson, 2015 WL 1499086, at *4 (finding plaintiff's section 1983 claim to assert the same "primary right" as negligence claim asserted in prior state action because both claims were based on the same alleged action and injury).  Furthermore, plaintiffs could have brought their section 1983 claims based on deliberate indifference against Nand and County of San Joaquin in their state court lawsuit, but failed to do so.  See Clark v.

Yosemite Community College Dist., 785 F.2d 781, 786 (9th Cir. 1986) ("A section 1983 claim may be brought in California state courts.").  Under California's claim preclusion doctrine, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date."  Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 897 (2002).

iii.    Privity Between Parties

This final claim preclusion requirement is clearly met with respect to defendants Nand and County of San Joaquin because both parties were also named as defendants in plaintiffs' prior state court action.  (See ECF No. 19 at Exhibit A, Exhibit D.)  Accordingly, plaintiff's claims against defendants Nand and County of San Joaquin are barred under California's claim preclusion doctrine. Therefore, the court recommends that defendants Nand and County of San Joaquin be dismissed from this action without leave to amend.[7]

However, this issue is far less clear with respect to defendant Dharawat as he was not named as a party to the plaintiffs' previous state court action.  Defendants argue that Dharawat meets the privity requirement because plaintiffs allege that he is an employee of County of San Joaquin, which was a defendant to the prior state action, and that plaintiffs' claims against him arise out of the medical care he provided to decedent as an employee of County of San Joaquin. However, this argument is insufficient to demonstrate that there is privity between Dharawat and the defendants dismissed from the previous state court action.  The mere fact that Dharawat is an employee of County of San Joaquin and was acting in that capacity when committing the acts alleged in the complaint does not necessarily establish privity.  See Triano, 120 Cal. App. 345. To the contrary, Dharawat's liability is not derivative of plaintiff's claims against County of San

---

[7] While the court recommends that these two defendants be dismissed from this case on the grounds that plaintiffs' claims against them are precluded; the court also notes that the current complaint's factual allegations against Nand and County of San Joaquin fail to state a claim for Eight Amendment deliberate indifference against these defendants.  Plaintiffs' allegations against these two defendants largely mirror those asserted against defendant Dharawat, which for the reasons discussed below, fail to allege a cognizable Eighth Amendment claim.  Because of this, the court also notes that dismissal of Nand and County of San Joaquin is also proper on defendants' alternative argument that the complaint fails to allege facts sufficient to state a claim against them.

Joaquin because plaintiffs allege claims against Dharawat based on his own conduct in providing medical care to decedent, while their claims against County of San Joaquin are premised on admitting decedent to SJGH based on policy or custom.  (See ECF No. 1 at ¶¶ 85-89.)  In sum, it cannot be said that Dharawat's interests were adequately represented by County of San Joaquin or any other party in the prior state court action.  Therefore, defendants' argument that plaintiffs' claims against Dharawat are barred by claim preclusion is without merit.

2.      <u>Plaintiffs' Deliberate Indifference Claims Against Dharawat</u>

Even though defendants' argument that plaintiffs' claims against Dharawat are barred by claim preclusion is without merit, their second argument, that plaintiffs fail to allege facts showing that he acted with deliberate indifference to decedent's serious medical needs is well taken.  Indeed, as defendants argue, plaintiffs' factual allegations as to Dharawat demonstrate, at most, negligence on his part, which is insufficient to state a claim of deliberate indifference.  <u>See</u> <u>Estelle</u>, 429 U.S. at 105-06.  Plaintiffs allege that Dharawat "oversaw [decedent's] medical care as an employee of [San Joaquin General Hospital], had access to [decedent's] medical files and reports, and was personally aware of [decedent's] critical need for life saving aortic valve surgery."  (ECF No. 1 at ¶ 28.)  Plaintiffs further allege that decedent was admitted to Dharawat's care on March 11, 2013, that Dharawat knew of decedent's heart condition, and that SJGH did not have the ability to perform heart valve replacement surgery.  (<u>Id.</u> at ¶¶ 55, 62.)  Plaintiffs allege that while decedent was in his care, "Dharawat failed to reasonably respond to [decedent's] serious medical need, by conducting redundant and unnecessary tests for a known heart condition [he] could not treat."  (<u>Id.</u> at ¶ 85.)  Finally, plaintiffs allege that Dharawat acted with deliberate indifference "by not reasonably responding to [decedent's] critical need for surgery, which [Dharawat and San Joaquin General Hospital] could not perform, and having [decedent] transferred to a hospital that could save his life."  (<u>Id.</u> at ¶ 90.)  Plaintiffs also attached to their complaint two medical reports issued by Dharawat while decedent was in his care detailing an examination and surgery performed on decedent on March 11, 2013, and March 13, 2013, respectively.  (<u>Id.</u> at Exhibit 7.)

////

1        These allegations fall short of demonstrating that Dharawat had the highly-culpable state

2    of mind required to establish deliberate indifference.[8]  When taken as true, the allegations of the

3    complaint establish, at most, that Dharawat acted negligently in caring for decedent, which is

4    insufficient to state an Eighth Amendment claim.  See Estelle, 429 U.S. at 105-06; Frost, 152

5    F.3d at 1130 ("Mere negligence in the provision of medical care . . . does not constitute a

6    constitutional violation.").  Accordingly, plaintiffs' Eighth Amendment claims against Dharawat

7    are dismissed.[9]  However, because the court cannot definitively determine at this juncture that

8    plaintiffs could not present any alleged facts that could establish that this defendant acted with

9    deliberate indifference in providing decedent medical care, the dismissal against Dharawat is with

10   leave to amend.[10]

11

12   _____

[8] Plaintiffs make factual allegations with regard to defendant Nand that are factually the same as
or similar to those asserted against Dharawat.  (See ECF No. 1 at ¶¶ 85-88.)  Accordingly, while
13   Nand should be dismissed from this action because plaintiffs' claims against him are precluded
by their prior state court action, the court also notes that dismissal of plaintiffs' claims against
14   Nand is also proper because plaintiffs fail to allege facts that would state a claim against him for
the same reasons they fail to state a claim against Dharawat.  Similarly, plaintiffs fail to state a
15   cognizable Eighth Amendment claim against County of San Joaquin because their allegations
against this defendant, that it improperly admitted decedent into its care pursuant to an
16   unspecified longstanding policy or custom (see ECF No. 1 at ¶¶ 63-65, 89-90), do not establish
that it acted with deliberate indifference to decedent's serious medical need.
17

18   [9] Defendants also argue that plaintiffs' request for punitive damages, which is listed as plaintiffs'
19   third cause of action, should be denied because plaintiffs failed to seek leave of court, which
California Code of Civil Procedure § 425.13 requires when punitive damages are sought against a
20   healthcare provider.  However, this argument lacks merit because section 425.13 is a state
procedural rule that does not apply to actions brought in federal court.  Estate of Prasad ex rel.
21   Prasad v. Cnty. of Sutter, 958 F. Supp. 2d 1101, 1121 (E.D. Cal. 2013)  ("[T]he plain meaning of
Rule 8(a)(3) conflicts with Cal. Civ. Proc. Code § 425.13, making § 425.13 inapplicable in
22   federal court.").  Nevertheless, because plaintiffs' claims against these three defendants should be
dismissed for the reasons discussed above, defendants' argument regarding the propriety of
23   plaintiffs' punitive damages request is moot.
24

25   [10] As with their deliberate indifference claims against Hsieh, McAlpine, McCue, Shadday and
Lipson, plaintiffs may wish to consult a medical expert regarding whether their factual allegations
26   against Dharawat could demonstrate that the medical care he provided to decedent could indicate
that his alleged actions were deliberately indifferent and attach that information to their amended
27   complaint.  However, as discussed above with regard to the prison physician defendants, the
inclusion of such additional information in an amended complaint is not required.
28

1    V.    Conclusion

2          For the foregoing reasons, defendants' motions to dismiss should be granted and

3    plaintiffs' complaint should be dismissed without leave to amend with regard to their claims

4    against defendants Swarthout, Nand, and County of San Joaquin.  Nevertheless, in light of

5    plaintiffs' pro se status, the fact that plaintiffs are proceeding on their original complaint, and

6    because it appears at least possible that plaintiffs can allege further factual detail that could give

7    rise to cognizable deliberate indifference claims against some or all of the defendants for which

8    dismissal with prejudice is not recommended, the court grants plaintiffs leave to file an amended

9    complaint with respect their claims against those defendants.  However, plaintiffs are cautioned

10   that if they elect to file an amended complaint, they must articulate their claims for which they

11   have been granted leave to amend through factual allegations that provide a plausible basis that

12   the remaining defendants acted with deliberate indifference to decedent's serious medical need.

13   More importantly, plaintiffs must have a good faith basis for making such allegations.  See Fed.

14   R. Civ. P. 11(b).  If after reviewing this order plaintiffs determine that they cannot in good faith

15   allege facts against particular defendants, then they may wish to omit their claims against such

16   defendants from a future amended complaint because failure to make allegations on a good faith

17   basis may be grounds for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of

18   Civil Procedure.  See Fed. R. Civ. P. 11(c).  If plaintiffs decide to file an amended complaint, it

19   shall be captioned "First Amended Complaint."

20         Plaintiffs are informed that the court cannot refer to a prior complaint, brief, exhibits, or

21   other filings to make plaintiffs' amended complaint complete.  Local Rule 220 requires that an

22   amended complaint be complete in itself without reference to any prior pleading.  Thus, once the

23   amended complaint is filed, it supersedes the original complaint, which no longer serves any

24   function in the case.

25         Plaintiffs are further informed that they are not required to file an amended complaint.  If

26   plaintiffs determine that they do not wish to pursue the action against any of the remaining

27   defendants at this juncture, they may instead file a request for voluntary dismissal of their claims

28   against that defendant without prejudice pursuant to Federal Rule of Civil Procedure

1    41(a)(1)(A)(i).

2         Based on the foregoing, IT IS HEREBY RECOMMENDED that defendants' motions to

3    dismiss (ECF Nos. 17, 18) be GRANTED WITHOUT LEAVE TO AMEND with respect

4    plaintiffs' claims against defendants Gary Swarthout, Priyasheelta Nand, and County of San

5    Joaquin and that these defendants be dismissed from this action with prejudice.

6         Furthermore, IT IS HEREBY ORDERED that:

7         1.    Defendants' motions to dismiss are GRANTED WITH LEAVE TO AMEND with

8    regard to plaintiffs' claims against defendants K. Hsieh, Samuel McAlpine, Jack McCue, G. Jude

9    Shadday, John Lipson, and Ramesh Dharawat.

10        2.    Within 60 days of the date of this order, plaintiffs shall file their First Amended

11   Complaint against defendants K. Hsieh, Samuel McAlpine, Jack McCue, G. Jude Shadday, John

12   Lipson, Ramesh Dharawat, Michael Bunuan, and Northbay Healthcare only.

13        3.    Defendants shall file their responses to the First Amended Complaint within 30

14   days of the date plaintiffs file their amended pleading.

15        4.    The status (pretrial scheduling) conference currently set for August 6, 2015, at

16   10:00 a.m., is VACATED.  If necessary, the court will reschedule this conference by separate

17   order after the parties have made the above-ordered filings.

18        These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

20   days after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23   shall be served on all parties and filed with the court within fourteen (14) days after service of the

24   objections.  The parties are advised that failure to file objections within the specified time may

25   waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

26   Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

27   ////

28   ////

IT IS SO ORDERED AND RECOMMENDED.

Dated:  July 24, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE